IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TEAM RESOURCES, INC., FOSSIL ENERGY CORPORATION, KEVIN A. BOYLES, PHILIP A. DRESSNER, MICHAEL EPPY, ANDREW STITT, AND JOHN OLIVIA,<br><br>Defendants. | CIVIL ACTION NO.:<br>3:15-CV-1045-N |

**DEFENDANTS TEAM RESOURCES, INC., KEVIN BOYLES AND FOSSIL ENERGY CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMEDIES AND ENTRY OF FINAL JUDGMENTS AND BRIEF IN SUPPORT**

No urgency whatsoever attaches to Plaintiff's Motion. In fact, a suggestion otherwise would put what Counsel expects to be a heavily and heartily contested hearing on disgorgement on a collision course with a case awaiting oral argument next month before the United States Supreme Court. Moreover, the perception of time sensitivity surrounding Plaintiff's Motion neglects to point out that the Securities and Exchange Commission ("Plaintiff", "SEC" or "Commission") has waited almost two years to file its Motion, notwithstanding a logical rationale for doing so. And, of greatest importance, all defense counsel, that is counsel for five of the seven defendants (counsel has not conferred with the one non-defaulted *pro se* defendant), concur that deferring even addressing discovery on disgorgement until after the United States Supreme Court decides *Kokesh v. Securities & Exchange Comm'n*, 137 S. Ct. 810 (2017) (No. 16-529, *cert. granted* Jan. 13, 2017) ("*Kokesh*"), would serve and promote judicial economy and

efficiency.[1] Meanwhile, proceeding now would prejudice the defendants and result in a proceeding of uncertain and possibly unnecessary scope.

When five of the seven Defendants – not just the three filing this Motion – settled with Plaintiff without admitting or denying the allegations, they each insisted on a critical provision in their respective Consents that materially informs this phase of this civil proceeding. That provision was the right to litigate not just the amount subject to possible disgorgement and civil monetary penalties, the two-pointed punitive tools that the Commission wields, but also whether a portion of the disgorgement is beyond the statute of limitations as computed from the date of filing of the Complaint (not from the disgorgement motion). That and nothing else is the *Kokesh* case. Accordingly, Team Resources, Inc., Kevin Boyles, and Fossil Energy Corporation (collectively referred to as "Team Resources Parties") hereby submit this response and opposition to Plaintiff's Motion for Remedies and Entry of Final Judgments (the "Motion") and, as explained more fully herein, request that this Court defer until after the Supreme Court decides *Kokesh*, that is decides the central issue of whether the five-year limitations period applies to SEC disgorgement actions, the commencement of discovery and scheduling of what may be a multi-week hearing on the Commission's Motion.

---

[1] As Counsel for Plaintiff noted in the Commission's Motion, "Plaintiff's counsel has conferred with counsel for Defendants … and each oppose the motion. Counsel for these Defendants believes that the Court's decision on the issues raised in the motion should be delayed until after the U.S. Supreme Court issues its decision in *Kokesh* []. That case will decide whether a five-year statute of limitations applies to SEC claims for disgorgement." Pl. Br., Document 42, PageID 492.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I. Introduction ..........................................................................................................................1

II. Argument .............................................................................................................................3

    A. Defendants Should Not be Ordered to Disgorge Over $30 Million. .......................3

        1. The Five-Year Limitations Period of 28 U.S.C. § 2462 Bars, at Least in Part, Plaintiff's Disgorgement Claim. .............................................3

        2. The Court Also Should Defer Considering and Conducting any Hearing on Plaintiff's Motion Because the Supreme Court Will Resolve Expressly Whether the Five-Year Limitations Period Applies to Disgorgement Orders. ................................................................6

        3. Plaintiff Fails to Approximate Reasonably the Amount of Proceeds Causally Connected to the Alleged Violations. ..........................................8

    B. The Court Should Not Impose a Civil Monetary Penalty. .....................................11

III. Conclusion .........................................................................................................................13

**TABLE OF AUTHORITIES**

**Cases**

*Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398 (5th Cir. 2007) .......................... 8, 11

*Gabelli v. SEC*, 133 S. Ct. 1216 (2013) ................................................................................. 3, 6

*Johns v. Evergreen Presbyterian Ministries, Inc.*, 826 F. Supp. 1050 (E.D. Tex. 1993) ............... 7

*Kokesh v. Securities & Exchange Comm'n,* 137 S. Ct. 810 (2017) (No. 16-529, cert. granted Jan. 13, 2017) ................................................................................................ 6, 7, 8, 13

*Landis v. North American Co.,* 299 U.S. 248 (1936) .................................................................. 7

*Litton Indus., Inc. v. Lehman Bros.,* 734 F. Supp. 1071 (S.D.N.Y.1990) .................................... 10

*S.E.C. v. Fischbach Corp.*, 133 F.3d 170 (2nd Cir. 1997) ............................................................ 5

*S.E.C. v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298 (W.D. Tex. Aug. 21, 2015) ............................................................................................................................... 12

*S.E.C. v. Inorganic Recycling Corp.*, No. 99 CIV. 10159 (GEL), 2002 WL 1968341 (S.D.N.Y. Aug. 23, 2002) ................................................................................................. 12

*S.E.C. v. JT Wallenbrock & Associates*, 440 F.3d 1109 (9th Cir. 2006) ..................................... 10

*S.E.C. v. U.S. Envtl., Inc.*, No. 94CIV.6608(PKL)(AJP), 2003 WL 21697891 (S.D.N.Y. July 21, 2003), *aff'd*, 114 Fed. Appx. 426 (2d Cir. 2004) .......................................................... 11

*S.E.C. v. Utsick*, No. 06-20975-CIV, 2009 WL 1404726 (S.D. Fla. May 19, 2009), *aff'd*, 373 Fed. Appx. 924 (11th Cir. 2010) ................................................................................. 10

*S.E.C. v. Wyly*, 56 F. Supp. 3d 260 (S.D.N.Y. 2014) .................................................................. 9

*SEC v. Blatt*, 583 F.2d 1325 (5th Cir. 1978) ............................................................................. 8

*SEC v. Graham*, 21 F. Supp. 3d 1300 (S.D. Fla. 2014), *reversed in part on other grounds*, *Graham*, 823 F.3d 1357 (11th Cir. 2016) ............................................................................ 5

*SEC v. Graham*, 823 F.3d 1357 (11th Cir. 2016) ................................................................... 4, 5

*SEC v. McCaskey,* No. 98 Civ. 6153, 2002 WL 850001 (S.D.N.Y. Mar.26, 2002) ..................... 10

*SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622 (N.D. Tex. Apr. 5, 2012) ..................... 12

*SEC v. Rosenfeld,* No. 97CIV.1467WHPRLE, 2001 WL 118612 (S.D.N.Y. Jan.9, 2001) .......... 10

*SEC v. Shah,* No. 92 Civ.1952, 1993 WL 288285 (S.D.N.Y. July 28, 1993) .............................. 11

*SEC v. StratoComm Corp.*, 89 F. Supp. 3d 357 (N.D.N.Y. 2015) .................................................. 12

*SEC v. Thomas James Assocs., Inc.,* 738 F. Supp. 88 (W.D.N.Y.1990) ...................................... 10

*U.S. v. Ursery*, 518 U.S. 267 (1996) ................................................................................................. 5

*United States v. Ward*, 448 U.S. 242 (1980) .................................................................................... 5

**Statutes**

28 U.S.C. § 2462 ............................................................................................................................ passim

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014) .......................................................................................... 4

I.  **INTRODUCTION**

On April 6, 2015, Plaintiff filed the instant civil enforcement action alleging violation of certain provisions of the federal securities laws against the defendants. Contemporaneous with the filing of this action, on April 6, 2015, the three Team Resources Parties and co-defendant Olivia consented to a bifurcated settlement, without admitting or denying the allegations of the Complaint. On June 8, 2015, co-defendant Dressner next consented to a bifurcated settlement, also without admitting or denying the allegations of the Complaint. On August 8, 2016, the Commission obtained a default judgment against co-defendant Stitt, who never has appeared, *pro se* or through counsel, in this matter. Finally, on October 14, 2016, co-defendant Eppy consented to a bifurcated settlement, also without admitting or denying the allegations of the Complaint. The express bifurcating language of the Consents is

> in connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion … the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure, except that either Party may move the Court to allow discovery in connection with such Motion and any Opposition to such Motion.

Documents 3, 5 and 6 at Para. 5. The Team Resources Parties will be moving this Court to allow appropriate but limited discovery in advance of a hearing on the Commission's motion in connection with the Team Resources' Parties anticipated vigorous opposition to Plaintiff's Motion.

The allegations as against certain of the Team Resources Parties date back as early as 2007, approximately eight years before the Commission filed this action, such that three years of the alleged conduct occurred for approximately three years beyond the five-year limitations period that governs SEC actions. The allegations, subject to the without admitting or denying

1

resolution, extend into 2012. Notwithstanding the Consent settlement, the Commission acknowledges that all Defendants "are not prohibited from arguing that certain transactions lie beyond the applicable statute of limitations. Nor are they prohibited from challenging the SEC's allegations regarding the amount of funds received by them." Pl. Br., Document 42, PageID 489 (internal citations omitted).

Similar to *Kokesh*, currently pending before the Supreme Court and set for argument in approximately one month (on April 18, 2017), the Team Resources Parties assert that the five-year statute of limitations set forth in title 28 U.S.C. § 2462 bars disgorgement relating to a substantial portion of the alleged violations. Indeed, the precise issue in *Kokesh* – whether the five-year limitations period applies to SEC disgorgement actions – directly impacts the Court's ruling on remedies and a final judgment in this case. In turn, that impacts the scope of discovery, the quantum of evidence and even the legal principles that the Team Resources Parties will put before this Court. Until the Supreme Court decides *Kokesh*, and the Court and all Parties assess the Supreme Court's opinion, it simply is impossible to define reasonably the scope and duration of the hearing on disgorgement and civil monetary penalties. Because the Commission filed this action on April 6, 2015, the Team Resources Parties intend to argue that, at a minimum, the law and common sense dictate complete preclusion of all amounts received prior to April 6, 2010. To move forward prior to the *Kokesh* decision either will impose an untenable and unnecessary burden on the Defendants to offer proof in support of their positions regarding use of proceeds prior to expiration of the statute of limitations or require a "redo" if the Court only were to entertain evidence relating to the period between April 6, 2010 and 2012. That is why the outcome of *Kokesh* will impact significantly the scope of evidence admissible at an evidentiary hearing regarding the proper amount of disgorgement, if any, and, likewise, may impact directly

the amount of disgorgement itself. As to that point, the Team Resources Parties note that Plaintiff has not acted with urgency in this matter, and, thus, cannot claim prejudice by a stay pending the *Kokesh* decision. Conversely, as noted above, awaiting the Supreme Court's ruling in *Kokesh* will conserve judicial resources and promote efficiency and judicial economy. For that reason, this Court should abstain from ruling on this Motion until after the Supreme Court decides *Kokesh*, and only then set a status conference of counsel to discuss discovery needs and expectations and plan for a hearing before the Court.

## II. ARGUMENT

### A. Defendants Should Not be Ordered to Disgorge Over $30 Million.

#### 1. The Five-Year Limitations Period of 28 U.S.C. § 2462 Bars, at Least in Part, Plaintiff's Disgorgement Claim.

As a threshold matter, the five-year limitations period of 28 U.S.C. § 2462 bars all of Plaintiff's disgorgement claims that pre-date April 6, 2010. In *Gabelli v. SEC*, 133 S. Ct. 1216, 1224 (2013), the Supreme Court refused to apply the discovery rule to enforcement actions brought by the Commission, thus recognizing that the default statute of limitations for federal civil enforcement actions, 28 U.S.C. § 2462, governed all Commission actions. In doing so, the *Gabelli* Court explained that:

> Statutes of limitations are intended to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. They provide security and stability to human affairs. We have deemed them vital to the welfare of society, and concluded that even wrongdoers are entitled to assume that their sins may be forgotten. [133 S. Ct. at 1221 (quotation marks and internal citations omitted).]

To that point, 28 U.S.C. § 2462 states, in pertinent part, that:

> [e]xcept as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any *civil fine, penalty, or forfeiture, pecuniary or otherwise*, shall not be entertained unless

> commenced *within five years* from the date when the claim first accrued .... [(Emphasis added).]

In fact, these principles apply just as readily and logically to the timing of the Commission filing its Motion for Remedies.

Despite the clear admonition that civil enforcement actions "shall not be entertained unless commenced within five years," Plaintiff likely will argue – no differently than in every other cookie cutter argument it makes on disgorgement around the country – that the Commission has the unlimited authority to bring an enforcement action so long as it titles the remedy sought as for disgorgement, rather than as a "civil fine, penalty, or forfeiture, pecuniary or otherwise." In *SEC v. Graham*, 823 F.3d 1357, 1363 (11th Cir. 2016), the 11th Circuit rejected this very argument. Specifically, the *Graham* court concluded that there was "no meaningful difference in the definitions of disgorgement and forfeiture[,]" as set forth in 28 U.S.C. § 2462. *Id.*

Congress chose not to define "forfeiture" in 28 U.S.C. § 2462; nonetheless, an accepted definition is "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." *Black's Law Dictionary*, p. 765 (10th ed. 2014). In the context of an "action, suit or proceeding," "forfeiture" likewise is known as "[a] judicial proceeding, the object of which is to effect a confiscation or divestiture" – precisely what the Commission seeks here. *Black's Law Dictionary*, p. 765 (10th ed.). "Disgorgement" similarly is defined as "[t]he act of giving up something (such as profits illegally obtained) on demand or by legal compulsion." *Black's Law Dictionary*, p. 568 (10th ed.). From these definitions, though the definitions of forfeiture and disgorgement may vary slightly, both serve the same fundamental law enforcement seizure-centric purpose of confiscation:

> Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government. **Forfeitures** serve a

4

> *variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to **require disgorgement** of the fruits of illegal conduct.*

*U.S. v. Ursery*, 518 U.S. 267, 284 (1996) (emphasis supplied); *see S.E.C. v. Fischbach Corp.*, 133 F.3d 170, 175 (2nd Cir. 1997) ("The primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains.").

The "purpose or effect" rather than the precise label ascribed to the confiscatory act determines the applicability of 28 U.S.C. § 2462. *See United States v. Ward*, 448 U.S. 242, 249 (1980) ("First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention."). In *Graham*, the 11th Circuit found "no meaningful difference in the definitions of disgorgement and forfeiture. *Graham*, 823 F.3d at 1364. In explaining that finding, the *Graham* Court stated that "to read the two terms according to the[ir] [technical] interpretation would violate the long-settled principle 'that words in statutes should be given their ordinary, popular meaning unless Congress clearly meant the words in some more technical sense.'" *Id.* at 1364 (quoting *United States v. Nat'l Broiler Mktg. Ass'n*, 550 F.2d 1380, 1386 (5th Cir. 1977), *aff'd*, 436 U.S. 816 (1978)). Here, there is nothing to indicate that Congress, in enacting section 2462, intended to adopt the exacting and technical definitions of forfeiture and disgorgement. *Id.* "To hold otherwise would be to open the door to Government plaintiffs' ingenuity in creating new terms for the precise forms of relief expressly covered by the statute in order to avoid its application." *SEC v. Graham*, 21 F. Supp. 3d 1300, 1311 (S.D. Fla. 2014), *reversed in part on other grounds*, *Graham*, 823 F.3d 1357.

5

With respect to this case, the Commission commenced its investigation in approximately April 2010, investigated for five years, and then brought this civil enforcement action almost two years ago, in April 2015. Nearly seven years since starting the investigation, the Commission now seeks to penalize the Team Resources Parties and the other defendants by commencing the disgorgement phase of the case. The plain language of 28 U.S.C. § 2462 dictates that no "civil fine, penalty, or forfeiture, pecuniary or otherwise" shall be entertained regarding any transaction occurring before April 2010 – five years prior to the date of filing the Complaint. In fact, Plaintiff's exhibit, specifically Document 43-1, is more than eleven pages of listing and relating to the Team Resources Parties' transactions between 2007 and early 2010. As a matter of law and fundamental fairness, this Court should not consider these transactions in assessing any possible civil fine, penalty, or forfeiture, including, without limitation, disgorgement, due to the limitations period.[2] *See* 28 U.S.C. § 2462. Any other ruling would violate the plain language of section 2462 and undermine the public policy of stability that Congress intended for section 2462 to promote. *Gabelli*, 133 S. Ct. at 1221.

>  **2.  The Court Also Should Defer Considering and Conducting any Hearing on Plaintiff's Motion Because the Supreme Court Will Resolve Expressly Whether the Five-Year Limitations Period Applies to Disgorgement Orders.**

The Team Resources Parties, consistent with their Consents, wish to conduct discovery on possible disgorgement and have a full hearing before this Court on disgorgement. This Court should defer setting in process a discovery timetable and scheduling a hearing on Plaintiff's Motion until after the Supreme Court decides *Kokesh*, in which the salient issue is whether "the five-year statute of limitations in 28 U.S.C. § 2462 appl[ies] to [the SEC's] claims for

---

[2] The Team Resources Parties contest the misleading nature of the SEC's charting of these transactions because proper analysis and explanation is a prerequisite to connecting specific transactions to the purported ill-gotten profits.

'disgorgement.'" *Kokesh*, Pet. Br., p. i (Exhibit A). The Supreme Court's decision on this issue will have a direct and significant impact on the resolution of this case. The issue is as simple and straightforward as whether the Court does or does not need to receive evidence on three and one-half years of use of investor proceeds. That window alone could be the difference between the need to depose and call witnesses relevant to the pre-April 2010 oil and gas offerings and the consideration of tens of thousands of records related to those offerings and a more streamlined hearing of only the post-April 6, 2010 offerings and used proceeds. Well-recognized is this Court's inherent "power to stay proceedings [as] incidental to the power inherent in every court to control the disposition of the causes on its docket with *economy of time and effort for itself, for counsel, and for litigants.*" *Landis v. North American Co.,* 299 U.S. 248, 254–55 (1936) (citing *Kansas City Southern R. Co. v. United States,* 282 U.S. 760, 763 (1931) (emphasis added). A stay is appropriate particularly where the Supreme Court is set to decide a controlling issue of law. *See Johns v. Evergreen Presbyterian Ministries, Inc.*, 826 F. Supp. 1050, 1051 (E.D. Tex. 1993) (staying a case until the Supreme Court rendered its ruling on law directly impacting relevant Fifth Circuit precedent).

In settling this matter, without admitting or denying the allegations, the Team Resources Parties reserved expressly the right to argue certain transactions lie beyond the five-year statute of limitations period as well as the right to take discovery regarding the amount Plaintiff claimed in its request for judgment. Document 3, 5 and 6 at Para. 5. Importantly, the Team Resources Parties reserved the right to argue the very issue presented in *Kokesh.* Regardless, the Commission now deigns to press forward – almost two years after initiating this action – to expend judicial resources on a matter that the highest court is set to resolve shortly. The Commission simply could have waited until the decision in *Kokesh* but chose not to do so. The

Commission has not acted with any sense of urgency in this seven-year long matter until now and does not assert a bona fide rationale for expedient treatment of its recent Motion.

Nothing about the present circumstances suggests Plaintiff will be prejudiced by a stay. The public interest will, however, be served best by deferring the proceeding because judicial economy and efficiency will be promoted – by the short wait for the Supreme Court to decide definitively a controlling issue of law, which in turn will have a tangible impact on the scope and quantum of evidence and legal issues presented at the inevitable hearing on this issue. As noted above, the Commission alleges multiple violations outside of the five-year limitations period of 28 U.S.C. § 2462. The outcome of *Kokesh* may render entirely irrelevant and beyond the scope of the Hearing the pre-April 6, 2010 transactions and voluminous and detailed financial evidence, and, instead, likely halve in length and volume what all Defendants need to present and what the Commission may assert and rely on. *See generally* Pl. Br., Document 43-1. Simply, it would be unnecessarily wasteful to proceed when the Supreme Court is about to hear argument on and rule on an issue that will impact directly the scope of evidence and conduct that this Court will consider in determining what remedies, if any beyond the injunction, are warranted.

   **3. Plaintiff Fails to Approximate Reasonably the Amount of Proceeds Causally Connected to the Alleged Violations.**

Further to the principles discussed above, the Court has discretion in determining the amount of disgorgement to be ordered; nevertheless, "[t]he court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. *Any further sum would constitute a penalty assessment.*" *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) (emphasis added). In other words, the amount subject to disgorgement is "limited to property causally related to the wrongdoing at issue." *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 413 (5th Cir. 2007). The purpose of a hearing will be both to require the

8

Commission to establish that critical causal connection and to refute directly the Commission's assertions.

The purpose of limited discovery in advance of the hearing will be to enable the Parties to determine more precisely or even just come close to a reasonable approximation as to the amount potentially subject to disgorgement. To the extent that the Commission asserts a "pie in the sky" amount of approximately $30 million, plus pre-judgment interest, the Team Resources Parties confidently represent that they and the Commission differ by somewhere in the neighborhood of $29 million, prior to assessing any prejudgment interest and arguing ability to pay. "While the disgorgement calculation does not need to be exact, it has to be a 'reasonable approximation of profits causally connected to the violation.'" *S.E.C. v. Wyly*, 56 F. Supp. 3d 260, 268 (S.D.N.Y. 2014). "It is the SEC's [Plaintiff's] burden to establish *both* a reasonable approximation of profits *and* the causal connection between the approximation and the violations." *Id.* (emphasis in original). In Plaintiff's estimation, a perfunctory charting of the amount of the deposits being made into certain bank accounts and nothing more – no explanation, no analysis – to claim "[t]hese amounts represent the proceeds received . . . as determined by a detailed review of the relevant financial records" equates with a reasonable approximation of ill-gotten gains and a causal connection to the alleged wrongdoing. Pl. Br., Document 42, PageID 489. The Team Resources Parties disagree and should have an opportunity in discovery, in advance of a hearing, to test and establish the unreasonableness of the approximation and asserted connection. Today, the Commission's Staff alone knows the purported causal connection between the allegations and the transactions; that, however, is insufficient to provide the Court with a reasonable approximation of the profits casually connected to the asserted securities laws violations.

9

Neither the Court nor the Team Resources Parties have the detailed information from which to conduct the analysis and assess the Commission's disgorgement theory.

It is axiomatic that the amount to be disgorged should not contain sums connected to legitimate business. *See, e.g.*, *S.E.C. v. Utsick*, No. 06-20975-CIV, 2009 WL 1404726, at *7 (S.D. Fla. May 19, 2009), *aff'd*, 373 Fed. Appx. 924 (11th Cir. 2010) (distinguishing between legitimate and illegitimate business expenses and noting that disgorgement was limited to illegitimate business expenses); *SEC v. Thomas James Assocs., Inc.,* 738 F.Supp. 88, 89-90 (W.D.N.Y.1990) (first, finding that the SEC's initial measure of disgorgement was nothing more than a theoretical construct, and second, deducting certain legitimate business expenses, such as commissions, that would have been incurred regardless of a securities violation); *Litton Indus., Inc. v. Lehman Bros.,* 734 F. Supp. 1071, 1077 (S.D.N.Y.1990) (allowing deductions for various transaction costs, including brokerage commissions paid to third party brokers as part of an agreement for services customarily rendered in connection with the transactions at issue); *S.E.C. v. JT Wallenbrock & Associates*, 440 F.3d 1109, 1114–15 (9th Cir. 2006) (explaining that where there is at least a partially legitimate company, a disgorgement assessment should take account of and deduct legitimate business expenses, but ultimately concluding that defendants' entire business enterprise was fraudulent, and therefore, no deduction was permitted); *SEC v. Rosenfeld,* No. 97CIV.1467WHPRLE, 2001 WL 118612, *2 (S.D.N.Y. Jan.9, 2001) ("A court may in its discretion, deduct from the defendant's gross profits certain expenses incurred while garnering illegal profits, including correspondence and related expenses and transaction costs, such as brokerage commissions."); *SEC v. McCaskey,* No. 98 Civ. 6153, 2002 WL 850001, *4 (S.D.N.Y. Mar.26, 2002) (holding that a court may deduct from the amount to be disgorged any direct transaction costs, such as brokerage commissions, which "plainly reduce the wrongdoer's

actual profit"); *SEC v. Shah,* No. 92 Civ.1952, 1993 WL 288285, *5 (S.D.N.Y. July 28, 1993) ("Allowing a deduction for reasonable brokers' commissions incurred in making insider trades is consistent with the view in the Second Circuit that disgorgement is not a penalty assessment, but merely a means of divesting a wrongdoer of ill-gotten gains."); *S.E.C. v. U.S. Envtl., Inc.*, No. 94CIV.6608(PKL)(AJP), 2003 WL 21697891, at *27 (S.D.N.Y. July 21, 2003), *aff'd*, 114 Fed. Appx. 426 (2d Cir. 2004) (acknowledging at an evidentiary hearing that certain premiums purchased paid on several life insurance policies may be legitimate business expenses and thus, those amounts were not included in the amount sought to be disgorged). Plaintiff's conclusory chart merely lists transactions, but wholly fails to account for legitimate business or business expenses, or otherwise distinguish between what were funds obtained lawfully and what the Commission may wish to describe differently. As the party seeking disgorgement, Plaintiff alone must make that distinction. Yet, the Commission is asking this Court to order disgorgement without making the distinction, satisfying its precise burden and affording the Team Resources Parties and other defendants their negotiated right to contest disgorgement.[3] *Allstate Ins. Co.*, 501 F.3d at 413.

**B. The Court Should Not Impose a Civil Monetary Penalty.**

Following directly from the preceding discussion is the inherent and serious flaw in Plaintiff's request for civil monetary penalties on transactions occurring between 2007-2012, a period which includes transactions in years beyond the statutory limitations period. Section 2462 bars the imposition of civil penalties on any violation occurring prior to April 2010, thereby circumscribing drastically the amount of disgorgement attributable to the asserted violations.

---

[3] Plaintiff also asks the Court to impose joint and several liability on each of the Team Resources Parties. Defendants intend to assert that joint and several liability is not appropriate in the instant case.

Thus, as an initial matter, there is a fundamental question regarding the appropriate gross amount of pecuniary gain – even treating "the allegations of the Complaint [as] accepted [] and deemed true by the Court" – for ultimate determination by the Court; Plaintiff's demand to penalize to an undefined amount is untenable. Pl. Br., Document 42, PageID 491.

This Court, in a securities fraud case previously brought by the Commission identified several factors that this Court should consider before deciding whether, or what amount, of civil penalty to impose. *SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, *3 (N.D. Tex. Apr. 5, 2012). Those factors include, *inter alia*, the degree of a defendant's scienter and whether the penalty should be reduced due to a defendant's demonstrated current and future financial condition. *Id*. Despite the fact that the Commission's Staff rarely finds a case in which it strains not to describe the conduct as of unparalleled egregiousness, this Court recognizes that there are other considerations that will impact the Court's analysis and decision.

By consenting to entry of the injunction, without admitting or denying the allegations, and deferring disputing the amount of disgorgement and civil monetary penalties, if any, the Team Resources Parties accepted responsibility for the allegations, and that was after cooperating fully throughout Plaintiff's investigation, dating back to the first voluntary document request in 2010. Prompt cooperation by a defendant can result in no civil penalty. *See S.E.C. v. Inorganic Recycling Corp.*, No. 99 CIV. 10159 (GEL), 2002 WL 1968341, at *5 (S.D.N.Y. Aug. 23, 2002). Moreover, the Team Resources Parties will present financial hardship as yet another mitigating factor for the Court's consideration. *See SEC v. StratoComm Corp.*, 89 F. Supp. 3d 357, 373 (N.D.N.Y. 2015) (cited in *S.E.C. v. Helms*, No. A-13-CV-01036 ML, 2015 WL 5010298, at *21 (W.D. Tex. Aug. 21, 2015)). In sum, the Team Resources Parties will argue

vigorously at a hearing on remedies for the Court to refrain from imposing a civil monetary penalty.

### III.  CONCLUSION

As the Court considers whether, as all of the represented Defendants request, to defer until after the Supreme Court's imminent decision in *Kokesh* the framework for discovery surrounding disgorgement and the parameters for the hearing on remedies, the Court may wish to consider the complete state of confusion that would present if the Motion and a hearing on remedies would move forward now.  Would discovery and the presentation include pre-April 6, 2010 allegations?  If yes, and after what easily could be a multi-week hearing, what happens then if the Supreme Court rules for the Petitioner in *Kokesh* and determines that the five-year statute of limitations does bar claims for disgorgement beyond the limitations period?  All parties, Plaintiffs and Defendants alike, will have spent considerable unnecessary time and expense for evidence and arguments that will be jettisoned after the fact.  And this is but one element of one of four scenarios, all of which are equally convoluted and would perpetuate uncertainty if the Court were to address remedies before the forthcoming imminent decision in *Kokesh*.  There is a solution, which is the Commission walking away entirely and irreversibly from its disgorgement demand associated with any allegations that predate April 6, 2010.  The Court, recognizing that the Commission will be unwilling to do so, should not let the Commission "have it both ways." Respectfully, and as requested here by the Team Resources Parties and all represented defendants, this Court should defer all discovery and proceedings regarding remedies until after the Supreme Court decides *Kokesh*.

Dated: March 16, 2017                                    Respectfully submitted,

                                                         */s/ Jacob S. Frenkel*

                                                         *As Counsel for Defendants Team Resources,*

13

*Inc., Fossil Energy Corp., and Kevin A. Boyles*

*Pro Hac* Motions Pending:[4]

Jacob S. Frenkel (MD Bar No. 19920609002)
Chelsea M. Smialek (MI Bar No. P80015)
DICKINSON WRIGHT PLLC
1825 Eye Street, Suite 900
Washington, D.C. 20006
T: (202) 466-5953
F: (202) 659-1559
jfrenkel@dickinsonwright.com
csmialek@dickinsonwright.com

---

[4] Jacob Frenkel, as Counsel for the Team Resources Parties has conferred with Counsel for the Commission, who does not object to Counsel's admission *pro hac vice*. Mr. Frenkel is awaiting receipt of his Certificate of Good Standing from the State of Maryland and will submit his motion promptly upon receipt. Ms. Smialek has submitted her Motion for Admission *Pro Hac Vice*, and her Motion awaits the Court's approval.

## CERTIFICATE OF SERVICE

I certify that on March 16, 2017, I electronically filed the foregoing ***Response in Opposition to Plaintiff's Motion for Remedies and Entry of Final Judgments and Brief in Support*** with the Clerk of the Court for the Northern District of Texas, Dallas Division, using the CM/ECF system. The electronic case filing system will send a "Notice of Electronic Filing" to all counsel of record who has consented in writing to accept service by electronic means.

I further certify that on March 16, 2017, I served a true and correct copy of same and the notice of electronic filing by electronic mail and/or sending a copy via First Class US Mail and depositing same in an authorized United Parcel Service depository at 1825 Eye St., N.W., Ste. 9000, Washington, D.C. 20006, addressed to the following parties and persons entitled to notice that are non-CM/ECF participants:

John Olivia
3600 Harbor BL #50
Oxnard, CA 93035
*Pro Se*

Christopher Bruno
10615 Judicial Drive, Suite 703
Fairfax, VA 22030
cbruno@brunodegenhardt.com
*Attorney for Defendant Phillip A. Dressner*

                                                                             /s/ *Chelsea M. Smialek*